IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CANDICE A. ERIKSEN,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

6:15-cv-00150-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Candice Eriksen ("Eriksen") seeks judicial review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). I have considered all of the parties' briefs and all of the

evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482

U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* SSR 96-8p, 1996 WL 374184.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant

is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing Court must affirm an Administrative Law Judge's decision if the ALJ applied the proper legal standards and his findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* at 1035. The Court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d

at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Born in April, 1970, Eriksen was 40 years old on her alleged onset date of September 10, 2010. Tr. 18, 177, 202.[1] She filed for DIB on June 13, 2011, alleging disability due to fibromyalgia, degenerative disc disease, and osteoarthritis. *Id.* After her applications were denied initially and on reconsideration, Eriksen appeared and testified before an ALJ on March 28, 2013. Tr. 34-66, 100, 107. On July 26, 2013, the ALJ issued a decision finding Eriksen not disabled. Tr. 15-29. The Appeals Council denied Eriksen's subsequent request for review on December 5, 2014, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4; *see* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This appeal followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Eriksen had not engaged in substantial gainful activity since her alleged onset date. Tr. 20. At the second step, the ALJ found that Eriksen had the severe impairments of degenerative disc disease, obesity, and diabetes mellitus with peripheral neuropathy. *Id.* The ALJ also found Eriksen suffered from the non-severe impairments of fibromyalgia, hypertension, and affective mood

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 17.

5 – OPINION AND ORDER

disorder. Tr. 20-21. Because Eriksen's impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis. *Id.*

At the third step, the ALJ found that none of Eriksen's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 22. The ALJ therefore conducted an assessment of Eriksen's RFC and found that Eriksen could perform light work with the following limitations: she can lift and carry 20 pounds occasionally and 10 pound frequently; she can stand and/or walk a total of six hours in an eight hour workday, and sit for six hours in an eight hour workday with normal breaks; she can frequently climb ramps or stairs up to one story; she can never climb ladders, ropes, or scaffolds; she can frequently stoop, kneel, crouch and crawl; she must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, and workplace hazards such as dangerous machinery and unprotected heights. Tr. 23.

At the fourth step of the five-step process, the ALJ found that Eriksen was capable of performing her past relevant work as a nurse supervisor and as a pediatric nurse practitioner. Tr. 28. The ALJ therefore concluded that Eriksen was not disabled. Tr. 28-29.

## ANALYSIS

Eriksen argues that the Commissioner erred because she (1) improperly evaluated the medical evidence and (2) failed to find her fibromyalgia and affective disorder to be "severe" at step two.

### I. Medical Evidence

Eriksen argues that the ALJ improperly rejected the medical opinion of treating physician Giovanni Catalano, D.O., and of nurse practitioner Courtney Strand. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes

between the opinions of treating, examining, and non-examining physicians. The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). It is legal error to ignore an examining physician's medical opinion without providing reasons for doing so, and an ALJ effectively rejects an opinion where he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

### 1. Treating Physician Giovanni Catalano, D.O.

Dr. Catalano evaluated Eriksen's limitations on January 23, 2013. Tr. 454-65. He opined that Eriksen's pain would constantly interfere with her attention and concentration; that she could sit, stand, and walk for one hour each in an eight-hour workday; that she must walk every 15 minutes for 5 minutes, and that she needed an assistive device while standing and walking. Tr. 457-58, 461. Dr. Catalano stated that Eriksen should elevate her legs 90 percent of

the time spent sitting during an eight-hour workday. Tr. 459. He concluded that Eriksen was disabled.

The ALJ gave little weight to Dr. Catalano's opinion. Tr. 26. As an initial matter, Dr. Catalano's opinion was contradicted by the opinions of state agency medical consultants Neal Berner, M.D., and Richard Alley, M.D., who both assessed Eriksen's ability to work at the light exertional level. Tr. 27, 75-76, 90-91. The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Catalano's controverted opinion. *Lester*, 81 F3d at 830.

The ALJ provided at least two such reasons. First, the ALJ noted that Dr. Catalano's opinion was inconsistent with the medical record and with his own treatment notes. Tr. 26. An ALJ may reject an opinion that is brief, conclusory, or unsupported by clinical findings. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The ALJ may also reject a medical opinion that is inconsistent with the doctor's own treatment notes. *Valentine v. Comm'r*, 574 F.3d 685, 692-93 (9th Cir. 2009). Here, while Dr. Catalano noticed unsteadiness and opined that Eriksen required a cane or assistive device for ambulation (Tr. 458, 475), on multiple examinations he also noted that Eriksen walks with a normal gait. Tr. 468, 469, 478. Examining physician Clifford Roberson, M.D., also found that Eriksen was able to heel and toe walk fairly well despite a slow gait, and did not note any instability or weakness. Tr. 321. While susceptible to multiple interpretations, this inconsistency between Dr. Catalano's opinion and the objective medical record, including his own exam findings, constitutes a specific, legitimate reason for according less weight to his opinion. *Chaudhry*, 688 F.3d at 671; *Valentine*, 574 F.3d at 692-93; *see also Magallanes*, 881 F.2d at 750 (the court must uphold the ALJ's rational interpretation of the record).

The ALJ also noted that Dr. Catalano's opinion was belied by Eriksen's ability to perform various activities of daily living. Tr. 26. The ALJ may assign less weight to a physician's opinion that conflicts with a claimant's reported activities. *Morgan v. Comm'r*, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, for example, while Dr. Catalano opined that Eriksen's pain would cause constant interference with her attention and concentration, Eriksen was able to attend school online and practice Reiki, and planned to run a business from her home. Tr. 26, 180-86, 475. The ALJ also noted Eriksen was able to complete schoolwork every day, and to read for school and for entertainment several times a week. Tr. 22, 222-23. Because Eriksen's daily activities suggest a level of functioning greater than that assessed by Dr. Catalano, it was reasonable for the ALJ to assign less weight to Dr. Catalano's opinion. *Morgan*, 169 F.3d at 601-02. In sum, the ALJ provided legally sufficient reasons to assign little weight to Dr. Catalano's opinion.

### 2. Nurse Practitioner Courtney Strand

Nurse Strand submitted an assessment of Eriksen's functioning on September 8, 2011. Tr. 427-28. She opined that Eriksen can never lift any weight and that she can walk and stand for two hours and sit for six hours in an eight-hour workday. Tr. 427. In January, 2012, Nurse Strand submitted a statement opining that Eriksen had marked physical impairments, ambulated with limitations, and was unable to perform her past work. Tr. 437-42. She indicated that Eriksen would need to elevate her legs 75 percent of the time while sitting, and could never lift more than 10 pounds. Tr. 441.

Nurse Strand's treatment notes from March, 2012 indicate that Eriksen's pain would frequently interfere with her attention and concentration; that she must walk every 30 minutes for

1 to 5 minutes, and that she would occasionally require the use of an assistive device for standing and walking. Tr. 339-40.

The ALJ rejected Nurse Strand's opinion because it was inconsistent with the medical record as a whole. Tr. 25-26. Because Nurse Strand was an "other" source under the regulations, the ALJ was required to provide germane reasons for rejecting her opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012). Here, while Nurse Strand opined that Eriksen could never lift anything,[2] Michael Malos, M.D., noted that Eriksen could lift up to 25 pounds. Tr. 393. Further, Eriksen testified that she was not as limited as Nurse Strand alleged. Tr. 26, 47 (Eriksen's testimony that total limitation on lifting was "a little ridiculous"), 427. On this record, the ALJ provided a germane reason for rejecting Nurse Strand's opinion. *Molina*, 674 F.3d at 1111-12.

## II.   Step Two Findings

Eriksen next argues that the Commissioner erred because she omitted fibromyalgia from the list of severe impairments at step two and, as a result, formulated an inaccurate RFC. She also alleges that the ALJ erred by finding her affective disorder to be non-severe. At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a). Step two findings must be based upon medical evidence. *Id.* An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.* "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at

---

[2] *But see* Tr. 441 (indicating that Eriksen could perhaps lift less than 10 pounds, but not indicating frequency).

10 – OPINION AND ORDER

step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (*citing Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

The ALJ resolved step two in Eriksen's favor. Tr. 20. While she found Eriksen's fibromyalgia to be non-severe, she nevertheless included limitations related to fibromyalgia in the RFC by limiting Eriksen to occupations that do not require concentrated exposure to extreme cold or heat. Tr. 23.

In support of her contention that her fibromyalgia was "severe," Eriksen cites the opinion evidence of Dr. Catalano and Nurse Strand. As discussed above, the ALJ provided legally sufficient reasons for assigning less weight to those opinions and therefore was not required to credit their opinions in the sequential evaluation process. Further, Eriksen does not argue that the ALJ omitted any specific fibromyalgia-associated limitations in the RFC; therefore, any error in the ALJ's omission of her fibromyalgia in the listing of severe impairments at step two was harmless. *Lewis*, 498 F.3d at 911.

Regarding Eriksen's affective disorder, the ALJ found it to be non-severe. Tr. 21. She reasoned that Eriksen's mild depression and occasional complaints of anxiety did not cause significant work-related limitations. Tr. 21, 354, 368, 477. As Eriksen does not point to any limitations erroneously omitted from the RFC as a result of the ALJ's step two reasoning regarding her affective disorder, she has failed to show harmful error. *Lewis*, 498 F.3d at 911. The ALJ's step two findings are affirmed.

## CONCLUSION

The ALJ's decision finding Eriksen not disabled is supported by substantial evidence in the record and is therefore affirmed.

IT IS SO ORDERED.

DATED this 22nd day of July, 2016.

Honorable Paul Papak
United States Magistrate Judge